Mr. Chavez. The court is now in session. The final case this morning is number 20-2185, Inergetic AB v. Murata Manufacturing Co., Ltd. Mr. Chavez. Good morning, Your Honor. Go ahead. May it please the Court. This is an appeal from the Board's finding that 349 Patton was anticipated and obvious over the Dozee reference. The Board's finding depended upon the fact that it construed the term beam, a term recited in the claims at issue, to include both rigid beams and beams that were configured to deck. Suspectfully, this construction was divorced from the specification in which the claims emanate from. This Court has ruled in Phillips that the specification is the single best guide to the scope of claim terms and claims. In the 3419 Patton, the patent describes a gyro, simply a device that determines whether or not there's a... Let me tell you what my problem is. You look to the specification and all the discussion about bending in the specification talks about bending in a preferential direction, and yet that's not the claim construction that you want to give the beam. You don't say that it has to bend in a preferential direction, you just say it has to bend, right? So I don't see how the specification supports the construction that you're giving it as opposed to the more limited construction that it has to bend in a preferential direction. And if that's the case, we look at the claim language and the claim language about bending in a preferential direction is eliminated from Claim 20. It's in Claim 1, but not in Claim 20. So I'm just a little baffled as to how we can construe beam to include this specific requirement when, one, you don't even argue it, and, two, there seems to be a deliberate change in claim language to eliminate the preferential bending notion. Well, to answer that, Your Honor, in the specification, we do talk about how you can make it bend in a predetermined direction, admittedly, and they do speak of that throughout the specification. They also, however, they talk about— And every reference to bending in the specification talks about bending in a preferential direction or the soft direction or whatever it is. It doesn't talk about the general concept of bending, right? I believe it does, Your Honor. If you look at the general concept, and let me direct you, and I apologize, let me direct you to—it discusses, if you go to—I'd say, Your Honor, actually, Your Honor, I believe that, yes, I would have to agree with you. The specification does disclose consistently the predetermined direction. I would have to agree with you on that. However, I would say that if you look at the disclosure at column 7, starting at line 54, it actually talks about—it does talk about the soft bending direction, but it also talks about how you create a torsional—you do create—the torsional rotation leads directly to an oscillating movement of the oscillating mass, substantially within the plane of the substrate. This disclosure does talk about the soft bending direction, but it explains that it's the bending that is the important part of this, that once the inertia mass means puts a torsional force on the beam, it is the beam that starts bending, and that the bending is the important piece of this. So, you're not arguing that the word beam means having configured the bend in a preferential direction, right? I am not—no, we're not arguing that, Your Honor. We believe that if you look at also the way the claims are designated, you have a beam in the first instance in claim 20, and then in claim 28, you have the further limitation of the beam being in a preferential direction. We believe that that claim differentiation indicates that that would be a differentiator there. What about at column 3, starting at line 23? There's a long discussion of another aspect of the invention, which doesn't at all refer to the beam bending. So, when I look at the structure of what I'll just call your summary of the invention portion of your patent, beginning at column 2, line 1, it says, according to one aspect of this invention, and then it describes that particular aspect of the invention, and one piece of that aspect of the invention is a beam configured so that the beam bends most easily in one predetermined direction. But then column 3, starting at line 23 and going down to the bottom of that column, it begins with, according to another aspect of this invention, and that other aspect of the invention includes a beam, but it doesn't say anything about the beam being required to bend, let alone bend in a predetermined direction. And so, to me, I see this patent describing two aspects of this invention, the one aspect being column 2, where the beam bends, and then a second, another aspect of the invention in column 3, where it just says the beam, without talking about the beam bending, and to me, the descriptions of those two aspects of the invention really track your two independent claims at the very end of the patent, claims 1 and 20, where, again, you have claim 1 with a beam that bends easily in one predetermined direction, and then you have claim 20, where you just say beam. So although you have embodiments described in the detailed description that talk about how in this embodiment, that embodiment, you have a beam going in a soft bending direction, what you have up front in the summary of the invention is communicating to everyone that you have two aspects of the invention, one with a beam that bends, and one with just a beam. Why do we necessarily have to read this patent as redefining the word beam as always a beam that bends in the context here, where you have one aspect of the invention not talking about a beam that bends? Two points, Your Honor. The first is, if you look at that embodiment, it doesn't end at the end of claim 3. It reads all the way over to claim 4, continues to, if you go to claim 4, comp 6, it first talks about preferably the means for applying, excuse me for reading the patent, for applying potentials to set capacitive plates are adapted to apply signals. So it talks about preferably these signals that you have means for applying signals. Then in the context of that embodiment, it then talks about the signals cause a seesaw motion of each inertia mass means about the connecting bar, the beam being configured so that the beam bends. And then most easily, and again, this is most easily at a predetermined direction. In addition, Your Honor, I would point out that Dr. Heddenstern, the inventor, supplied a description of the two different types of gyros. If a sentence in a specification begins with preferably, does that mean always and must? No, Your Honor, but the sentence in the specification of preferably does not refer to the beam. It refers to the means that are going to excite the inertia mass. It's not saying the beam preferably bends or preferably the beam will bend. In the structure of the sentence, I don't believe preferably carries across the comment where we then start talking about the beam. I think that that preferably is a discussing, it's directly discussing the means in that case. So the word beam in Claim 1, by itself, does the word beam in Claim 1 require a beam that bends? Or is it the rest of the words surrounding the word beam in Claim 1 that actually call for a beam that bends, that makes Claim 1 require a bendable beam? Yes, Your Honor. But if you look at the limitation, there's a further limitation in Claim 1. It's in the predetermined direction in Claim 1. Right. I guess that, but that's my point, that in Claim 1, maybe the word beam by itself doesn't require a bendable beam. It's the surrounding words after the recitation of a beam where Claim 1 talks about the beam bending in a predetermined direction. That's the, those are the words that require in Claim 1 for the beam to be bending. Your Honor, I believe that if, I believe that there's nothing that necessarily indicates that you can't say that a beam is configured to bend, and then it bends in a predetermined direction and have that additional limitation. That's the first point. I think the second point, if we go to Claim 20, Claim 20 talks about the functionality in the, in how this has to operate. And so it talks about generating a first oscillation, a first oscillation in axis of the beam. One of the things we are told is this is supposed to ask, how does the specification change? Wait, wait, what your expert says is that it won't work unless it bends in a preferential direction. At least that's the way I read what he said. And that's not the limitation you're arguing for. He doesn't support the idea that it just has to bend. It can, it won't work unless it bends. He's got the more nuanced position that it won't work unless it bends in a preferential direction, which is not a claim construction for which you're arguing. Respectfully, I believe that the expert in this case, in his expert declaration, in the expert declaration pointed to specification where he talks about the bending, but he talks about in his declaration, he does talk about the fact that the beam is, that the beam must bend. Not simply must bend in a predetermined direction, but it must bend. Where does he say that? He says it in paragraph 42 of his declaration. Where is that? Where is it? What's the appendix site, please? Sorry, the appendix site. I apologize. That is appendix site 1170. In the context of no's, it does not happen. In the context of no's, he says, in my opinion, the sport being no's is it is position no's to not be flexible and bend, rather than no's to do the opposite. There's no teacher's position no's that the sport beam is flexible in any way, let alone that the sport beam is configured to bend. It's not necessarily the expert's opinion in this case that it has to bend in a predetermined direction. His opinion is bending is the sine qua non of a gyro within the scope of plane 20 being able to function. Well, he says that no's doesn't show bending at all. But where does he say that bending is essential to the invention as opposed to bending in the predetermined direction? In that disclosure, Your Honor, he did not exactly say that. I would have to agree. OK, go ahead. Your Honor, quite simply, it's generally been this court's position that there must be an inquiry into how an invention functions. At every turn, in every embodiment, this does talk about the beam bend. Now, there are long disclosures about the general arrangement of the beam. But it is true that every time it talks about when it finally gets to where the beam functions, how the beam functions, it talks about the beam bending. It does indeed say that the beam, and this is correct, bends in a predetermined direction when discussing the functionality. But the claims themselves point to two aspects. One, the beam bending in a predetermined direction. And the other one, the beam existing. But in some way, when one of the skill and the art reviews the claim and specification, they understand that the beam has to bend. Thank you. OK, we'll give you two minutes for rebuttal. And we'll hear from Ms. Oliver. Wait a moment. They'll move the monitor here. Hi. Thank you. Good morning, and may it please the court. Angela Oliver on behalf of Murata Manufacturing. There is no dispute that the plain meaning of beam includes- I just want to make sure Mr. Chavos is able to hear the argument. He's not on the screen anymore. Thank you, Your Honor, I can hear you. OK, thank you. Go ahead. Very good. There is no dispute that the plain meaning of the term beam includes beams that bend and beams that do not. And we only depart from the plain meaning in two circumstances under this court's case law, lexicography and disavowal. There's no basis for lexicography here. Well, not exactly. I mean, there are plenty of cases that, including Phillips, would say you've got to look to the specification to determine the meaning of the plain term. Absolutely, Your Honor, and- It doesn't have to redefine it explicitly. There can be implicit. If this specification suggested that bending was a required characteristic of the beam, then you'd be in trouble. Your Honor, yes. For example, one of the instances in which this court has found disclaimer is where the specification describes a feature as important or required or essential to the invention. For example, in the safety care case, the court did find a disclaimer of the plain meaning in that case. This was a case about a bariatric hospital bed. And the dispute was with respect to whether the limitation required pushing forces to also include pulling forces, as long as they were essentially pushing in the same direction. And in that case, the court did find a disclaimer based exactly on the line of reasoning that Your Honor is thinking of, in the specification, they specifically called out the disputed feature, pushing forces, as opposed to pulling forces. And they distinguished over the prior art in the specification based on that. And they said this is, quote, an important feature of the present invention. And that's the court quoting the specification there in that case. Did it say that the specification here suggests that bending in a predetermined direction is an important feature of the invention? And the expert said that it was essential. It wouldn't work without that. Well, Your Honor, I don't think that argument can carry the day for at least two reasons. First is the point that Judge Chen alluded to earlier with respect to column three, lines 23 through 48 of the specification. In the summary of the invention, they describe one aspect of the invention without ever talking about the beam bending. And this court has looked to the summary of invention, for example, in continental circuits, and said that based on the fact that the feature was not uniformly required in the present invention, in the summary of the invention, that showed that it was not a disclaimer. It was not an essential feature of that invention. So it's described two different ways in the summary of the invention. That means that as a whole, the invention does not include this particular requirement. But I think more to get— Ms. Oliver, excuse me. Is there anything in the specification that suggests that this invention would work in any way if the beam did not bend? Your Honor, there is certainly nothing in the specification that says the only way it would work is if the beam bends. Certainly that is the embodiment they have set forth. It describes a beam bending and explains how that functions. But there's nothing in there that says this is the only way to do it or a beam that is rigid or does not bend would not work. And if—excuse me, I'm sorry. And so that's the kind of disclaimer language that we are looking for in the specification. You didn't put in any expert testimony that says that this would work if it didn't bend, right? No, but that is because our expert did not present any testimony on any issue after the petition was filed. So the expert was not— That's an excuse? Well, it's just to provide context, Your Honor. It's not that there is not an answer for this. But we did—but again, this—to get more to the point of the actual argument that IAB is making— What about the nose reference? Does the nose—the nose reference is doing the same thing. And if I recall correctly, the beam isn't bending, but the—so the things that are the equivalent of connecting bars do bend. And the nose sensor operates for its intended purpose, right? Yes, Your Honor, that's correct. So nose A's primary function uses this exact same Coriolis force that's claimed here in Claim 20. And in that case, it is the arms, for lack of a better way to describe it, the cantilever arms that are moving as the primary source of oscillation in that case. So that is an instance that kind of essentially flips IAB's theory on its head. And that's—stepping back, that's what IAB's overall premise is. They're saying that one aspect, either the beam or the masses, one aspect has to bend and one has to be rigid. And before the board, in their theory even now— Nose A, if that's what you call it, doesn't show the support beam bending, right? Your Honor, we do have as our alternative argument evidence that nose A is able to bend. So— No, but wait, wait, wait. There's no question that some aspects of nose A bend. The board itself made such determination on pages 28 and 30. The question is whether the support beam bends. Your Honor, the only beam—just to be clear, I'll turn to nose A and make sure I'm referring to the same beam. So this is—nose A figure 8 is on page—appendix page 853. So there is one beam in nose A in the middle of the figure. And that is the same beam that we are talking about here with respect to whether it needs to bend or not. Now, the way that nose A works is these arms that kind of stick out on the side, so 22B, 22A, et cetera, those bend. And that starts the first oscillation. And so the beam there is not the primary bending object. So IAB's theory is that one piece must bend and one piece must be rigid. And they have said specifically we think claim 20 is limited to the beam must be bending and the masses must be rigid. But the board rejected both of those propositions. And first of all, they've only appealed one. So the board found that the masses do not have to be rigid. They can be flexible. And that has not been appealed. So we're already in a state that IAB's arguments on appeal are not consistent with the strategic choices they've made with respect to which portions of the board's opinion to appeal. The entire idea is just one has to bend and one has to be rigid. And nose A— The discussion of nose A bending at 28 to 30 is not relating to this beam, right? Let me confirm that, Your Honor. So on pages 28 and 30— I had known or researched that nose A thus teaches two beams that bend like a C, which prevents rotation, blah, blah, blah. That's not talking about the support beam that's at issue here, correct? That's correct. The aspects of nose A that bend like a C are these arms. So 22B, 22A. So that's a problem because that's— we're talking about a different beam that bends. And there's no showing that that beam, the support beam in nose A, bends, right? Okay, so yes, our alternative argument does provide evidence that the support beam in nose A is able to bend. So there's an IEEE article essentially showing that a beam that is fixed at both ends will bend to some degree. And we also presented evidence from the patent and the prior art showing that both devices are made of the same material, silicon. So the gyro and beam in the 349 patent and the gyro and beam in the prior art are both made of silicon. So— and their expert admitted that silicon will flex to some degree. So there is evidence with respect to that support beam in nose A having some ability to bend. But again, all of that is only relevant if the court reverses with respect to the claim of construction, which we do not think is appropriate here. There is simply no basis in the specification for limiting the beam to bend to some degree. So there is no express disparagement of beams that would be rigid. There's no, you know, explanation of how this is different in the prior art in that regard. There's nothing that limits the present invention to this particular limitation that IEEE has called out. And specifically, I'd like to go back— I hate to ask this question, but maybe I'm using the wrong buzzword. But after you read the 15 columns of this written description, what would you say is the inventive concept disclosed in that patent? Disclosed in the patent or in— Yeah, just disclosed in the patent. What is the inventor's inventive concept? He's trying to communicate. Your Honor, I believe that the inventor is focused on this idea of a seesaw motion that's being used to transfer energy from the means for exciting to start the two primary oscillations that occur, that affect the— that implement the Coriolis effect. So I believe the inventor was trying to focus on this seesaw idea and then what happens after that. And that's where you see the expert testimony that IEEE's presented, paragraphs 29 and 30. That's what they're focused on. This seems to require a bending beam. Your Honor, I think if we were talking about Claim 28, then I think we'd be— Just in terms of the concept of the invention, it seems to work by having a beam that bends, right? Yes, I think that aspect does. But I do not think that is what the inventor claimed in Claim 20. So respectfully, Claim 1 and Claim 28 do address that seesaw motion. So Claim 28 specifically calls that out. And that's one of the problems with IAB's argument here is that— What's the other invention that's in Claim 20? I do not believe there is an invention in Claim 20, Your Honor. Respectfully, I believe it claims the Coriolis force generally. It claims two oscillations without specifying what those are. It does not limit it to the seesaw oscillation. The Board found that specifically. The Board found that the seesaw motion is not required by Claim 20. That's at page 28 through 30 of the Board's opinion. And that has not been challenged on appeal. So essentially, Claim 20 is just written much broader. They claimed what they thought was their inventive aspect in other claims. But they had the freedom to try to claim more broadly, too. And that's what they did with Claim 20. It just doesn't include the seesaw concept. And the only importance of the beam bending is based and tied directly to that seesaw concept. So essentially, the energy is imported into the gyro through these capacitative plates or other means. And then the seesaw motion starts occurring. That causes a torsional rotation in the beam, which causes the beam to bend and then translates that motion to start the first oscillation of the two primary oscillations involved in the Coriolis force. And you're saying Claim 20 doesn't capture that. Yes, that's exactly right, Your Honor. It is captured again in Claim 28. And so I think that's another reason why— In Claim 1. Claim 1 and other claims dependent from Claim 1 as well. And even the two inertia mass means is claimed. So different variations of all of that are claimed in the dependent claimed and Claim 1. And by the way, Your Honor, Claim 1 and Claim 28 are not at issue here in this case. So those are not being challenged. Those will not be affected by this decision. So yeah, that is the overall point, is the entire argument that IAB has raised is based on that seesaw motion and the effects of it and the ramifications of it. Is there a parallel litigation going on in district court? Yes, Your Honor, there is. Are claims like Claim 1, Claim 28 being asserted there? The litigation has stayed. It's very early stages right now. All we have is the complaint, which only identifies at least Claim 20. And so Claim 1 is not currently identified. Claim 28 is not currently identified. Okay, just to reinforce, Your Honors, the reasons why IAB's argument that this is essential and important fails are for a few reasons. First, the spec just never tells us that, particularly with respect to this piece of the summary of the invention that never describes a claim vending. That's at Appendix 400, Column 3. So the spec never tells us that it's required for all embodiments or anything like that. The evidence that IAB relies on from their expert, primarily Paragraphs 29 and 30, were specifically discredited by the board as being unsupported by evidence. If you compare the language of the spec to his testimony, there's a bit of a gloss there that's added. And that was at Appendix Page 14 and 15. But most importantly, even if all of that were true, it simply doesn't pertain to Claim 20. Claim 20 only requires two oscillations and the entire process that IAB has discussed with respect to this seesaw motion, then the beam, then starting the first primary oscillation with respect to the Coriolis force. That is simply with respect to the third unclaimed oscillation. Your Honor, again, I'll emphasize that if the court disagrees and does change the claim construction in this case, we would respectfully request a remand to address the evidence that we have already presented. And Your Honors, if the court were to change the construction to be more limited to a predetermined bending direction, then we would respectfully ask for a remand there to present additional evidence and arguments as no party raised that construction before the board. So we think that would be appropriate for this court to remand in that circumstance as well. In sum, we respectfully request the court that the plain meaning of beam applies here. And unless the court has any further questions, we respectfully ask the court to affirm. Okay, thank you, Ms. Oliver. Mr. Chavez, just wait a moment till we will monitor back in position and you have a few minutes to rebuttal. Thank you, Your Honor. I'd like to just raise one point with what Kelly raised, which was saying that Claim 20 doesn't cover, the invention is disclosed in the specification. And I'd like to note something in the specification that directly hits on the importance of the beam bending    we have a lot of information about the bending of the beam. We have a lot of information that's in column 11 of this specification at line 32. And that paragraph, it talks about the two masses, 44 and 45. These are the inertia mass. And they talked about how those masses are excited. Okay, they're excited by a force. They will create a torsion, but here it says, consequent, the beam 41 executes a simple bend as illustrated by the dotted line 50. This is in figure four. And then it says, because the mass oscillates in antiphase, the total movement of the total system is zero on excitation of the bar because there is no movement of the center of gravity. So in other words, what's happening here, Your Honor, is that seesaw motion creates that axis. Here's the point where the inventor says a simple bend is all that's required. Whether, now, the rest of the embodiments talk about soft bending direction, but when it comes to the bending, the actual concept of bending, that is the basis of this invention. So what's the difference between claim one and claim 20 if we agree with you that the beam in claim 20 has to bend? Claim one, Your Honor, bends in a predetermined direction. Claim 20 bends, but there is not a predetermined direction because the predetermined direction is the extra limitation. Now, to the extent that somebody argues that that claim expands beyond the scope of this specification, that is a written description argument and not the basis for an argument saying that the invention, as held here, doesn't require the beam to bend. So if we were to construe claim 20 and the word beam to require bending in a predetermined direction, there would be no difference between claim one and claim 20. Is that correct? Your Honor, I'm not sure that's correct. Considering the scope of the language in claim one, I would have to be frank with you. I believe that there are... No, there's additional language at the end of claim one, Your Honor, that would be an additional limitation on additional limitation in that language so that the direction is neither parallel width nor perpendicular to said plane. The first oscillation may be initiated by an excitation force, which is not parallel with said plane. That's actually where they're too different. These are where they're truly too different. Just before we go, can you just translate why that makes one claim different from the other claim? If we were to construe beam to be a bendable beam that bends in a predetermined direction, blah, blah, blah? Because in the one case, you have the perpendicular oscillation in that claim one. Your Honor, that's an acute oblique line. So the oscillation is happening not perpendicularly to or parallel to, but it's happening at a diagonal. The axis is diagonal to the first oscillation. Okay. Thank you very much, Your Honor. Thank you very much. Thank both counsel. The case is submitted. And that concludes our session for this morning. All rise.